**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Durham,<br><br>             Plaintiff,<br><br>v.<br><br>MTC Financial Incorporated, et al.,<br><br>             Defendants. | No. CV-19-00238-PHX-DLR<br><br>**ORDER** |

On January 17, 2020, the Court denied Plaintiff's motion for summary judgment and granted Defendant's motion for summary judgment. (Doc. 74.) Days later, Plaintiff produced newly discovered evidence—namely, the April 12, 2011 letter ("Settlement Agreement")—which the Court determined justified reconsideration of the summary judgment order. (Doc. 83.) The parties have submitted supplemental summary judgment briefs addressing the newly discovered evidence. (Docs. 84, 85.) On reconsideration, the Court again denies Plaintiff's motion for summary judgment (Doc. 43) and grants Defendant's motion for summary judgment (Doc. 64).

**I. Background**

On April 11, 2007, Plaintiff borrowed $182,000 ("the Loan") from National City Bank. (Doc. 19 at 2, 10.) Repayment of the Loan was evidenced by a promissory note ("the Note") and secured by a second mortgage on Plaintiff's home located at 17251 61st Ave, Glendale, Arizona ("the Property") in the form of a deed of trust ("the DOT")

identifying Consumer Loan Services as the Trustee. (*Id.*) Per the terms of the Note, if Plaintiff did not make timely payments on the Loan, the DOT authorized the designated trustee, on the lender's behalf, to sell Plaintiff's home to satisfy the unpaid balance. On August 12, 2010, National City Bank assigned the DOT to Dreambuilder Investments, LLC ("Dreambuilder") (*Id.* at 17), which contracted with BSI Financial Services ("BSI") to administer and service the account.

Plaintiff fell behind on the Loan's payments in late 2010. (*Id.* at 2.) Plaintiff alleges that he called BSI in 2011 and was referred to the loss mitigation department, at which point he spoke to an unnamed representative. (Doc. 64 at 63.) He contends that he explained his home was worth less than his first mortgage balance due to the 2008 housing crisis, that he could not afford to continue to pay both his first and second mortgage payments, and that he intended to file for bankruptcy. (*Id.*) Allegedly, after negotiating with the representative, he promised to instead settle the second mortgage balance for $30,000 in exchange for the immediate release of the lien, to which the representative orally agreed. (*Id.* at 64.)

As evidenced by the newly discovered Settlement Agreement, BSI, through its representative Barbara Carter, sent Plaintiff a letter on April 12, 2011, which reads, in relevant part: "Dreambuilder Investments will accept a payoff in the amount of $30,000.00 (payable in installments) to satisfy this lien in full. Said lien to be released upon acceptance. This offer will expire 04-30-2011." (*Id.* at 11.) Plaintiff asserts he signed and returned the Settlement Agreement to BSI. BSI then prepared a separate Contingent Compromise Settlement Agreement (the "Contingent Compromise"), which Plaintiff signed on April 14, 2011. (Doc. 1-3 at 19-22.) The Contingent Compromise states, in relevant part,

> [The] lien was released pursuant to the acceptance of a settlement on the Subject Property, the terms of which were memorialized in a settlement letter agreement . . . dated April 12, 2011. Pursuant to the terms of the Settlement Agreement, Borrower still owes the amount outstanding under the terms of the Note, which . . . is $196,122.93 . . .
>
> Borrower agrees to pay the sum of $10,000.00, in one lump

> sum, to be received by Servicer . . . no later than 3 p.m. on May 13, 2011[.]
>
> Borrower(s) agrees to pay $20,000.00 of the current unpaid principal balance, plus interest thereon at a rate of Zero % per annum, over a term of 24 months. Borrower(s) will pay said sum by remitting a principal and interest installment payment each month in the amount of $200.00. The first installment must be received by Servicer no later than . . . June 1, 2011. Borrower(s) will continue to pay these payments on the same date of each month until all the principal and interest (and any other charges owed pursuant to this Agreement) are paid in full. If on May 1, 2013 any sums due hereunder are still outstanding, those sums must be paid in full on that date . . .
>
> Contingent on the Borrower(s) timely payment of all sums [Lender] agrees to compromise the amount due on the note . . . and accept the sum paid . . . as sufficient to discharge the obligation represented by the Deed of Trust . . .
>
> Any failure by Borrower(s) to timely make a payment required hereunder shall result in termination of this Agreement . . . If this Agreement is terminated, [Lender] shall be entitled to pursue its remedies . . . as if this Agreement had never existed . . .

(Doc. 1-3 at 19-22.)  Pursuant to the Contingent Compromise, Plaintiff submitted a $10,000 payment to BSI on April 21, 2011. (*Id.* at 24.) Thereafter, Plaintiff submitted an additional $200 payment, but ceased making payments pursuant to the Contingent Compromise thereafter. (Doc. 64 at 80.)

On November 7, 2011, Plaintiff filed for Chapter 7 bankruptcy, which was discharged on March 19, 2012. (Doc. 1-3 at 26-28.) On August 20, 2015, Dreambuilder assigned the DOT to Trinity. (Doc. 19 at 35.) In December 2017, Plaintiff began the process of refinancing the first mortgage on his home and contacted Trinity for information. At this time, Plaintiff believed that his home's second mortgage had been satisfied—the DOT having been released by the Settlement Agreement,[1] and the unsecured obligation to repay the Loan having been discharged through bankruptcy. On January 5, 2018, Trinity informed Plaintiff via letter that the outstanding amount on Plaintiff's loan was $28,655. (*Id.* at 38.) On May 31, 2018, Plaintiff received a Settlement Termination

---

[1] The parties were unable to uncover a document releasing the DOT during discovery.

- 3 -

Letter from Trinity, which explained that the Settlement Agreement dated April 12, 2011 had terminated and terms were reverted to the original Note and DOT due to Plaintiff's default on the agreement by failing to make a $200 payment by July 1, 2011. (*Id.* at 40.) On September 7, 2018, Plaintiff received a Notice of Demand and Intent to Foreclose from Trinity. (*Id.* at 46.) Plaintiff disputed the foreclosure. (*Id.* at 51.) On October 12, 2018, Plaintiff received a payoff balance of $240,431.99 from Trinity, and three days later received a Notice of Trustee's sale, which scheduled an auction of the Property for January 16, 2019. (*Id.* at 53, 57.)

Plaintiff filed a complaint in Maricopa County Superior Court on December 28, 2018, which was removed to this Court on January 11, 2019. (Doc. 1-3.) The complaint brings three claims. First, Plaintiff claims that Defendant failed to release the DOT pursuant to the Settlement Agreement in violation of A.R.S. § 33-707(A). Second, Plaintiff asserts that Defendant may not recover the unpaid debt because it is barred from doing so by the statute of limitations. Third, Plaintiff claims that Defendant is attempting to collect a debt that was discharged in bankruptcy in violation of 11 U.S.C. § 524. On January 15, 2019, the Court granted Plaintiff's request for a temporary restraining order, enjoining the January 16, 2019 trustee's sale of his home. (Docs. 17, 21.) On March 28, 2019, Plaintiff filed a summary judgment motion, and Trinity filed a summary judgment motion on June 28, 2019. On January 17, 2020, the Court issued an order denying Plaintiff's motion for summary judgment and granting Defendant's motion for summary judgment. (Doc. 74.) Plaintiff filed a motion to reconsider based on the discovery of the Settlement Agreement, which the Court granted. (Doc. 83.) The parties filed supplemental briefing addressing the newly discovered evidence. (Docs. 84, 85.) The parties' cross motions for summary judgment are now ripe.

**II. Legal Standard**

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F. 3d 1132, 1136 (9th Cir. 2001). Summary judgment is appropriate when there is no

genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question. *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III. Discussion**

The validity of the DOT is the central issue underlying all three of Plaintiff's claims. Indeed, it is undisputed that Plaintiff's personal liability on the Loan was discharged in bankruptcy, and Trinity does not seek to impose personal liability for the Loan on Plaintiff. However, Plaintiff's bankruptcy discharge specified, "a creditor may have a right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy." (Doc. 63 at 160.) This means Trinity may enforce its security

interest in the Property, assuming the DOT is valid.

Preliminarily, no reasonable juror could conclude that the DOT actually was released. The public record is devoid of any record releasing the DOT. BSI did not object to Plaintiff's bankruptcy discharge, suggesting that BSI believed its interest remained secured. The unauthenticated credit reports from Transunion and Experian relied on by Plaintiff to suggest the DOT was released, which characterize the debt as unsecured, contain obvious internal inaccuracies[2] that render them unreliable. Plaintiff listed the Loan as a secured debt in his bankruptcy schedules and stated his intention to reaffirm the debt. (Doc. 64 at 151, 153.) Further, Plaintiff's testimony does not suggest that the DOT was released. (Doc. 64 at 46.) To the contrary, as discussed more below, Plaintiff asserts that, despite the language in the Contingent Compromise, BSI failed to release the DOT. (Doc. 69 at 5.)

Plaintiff instead argues that the DOT is no longer enforceable for two reasons, reflected in counts one and two of his complaint: (1) the DOT is invalid because § 33-707(A) required BSI to release it upon Plaintiff's acceptance of the Settlement Agreement, and (2) the DOT is no longer enforceable because the statute of limitations on the underlying debt has run. Neither argument is persuasive.

Taking count two's statute of limitations argument first, it is undisputed that Plaintiff ceased making payments under the Contingent Compromise before paying the full $30,000 owed. As a result, the Contingent Compromise terminated, and the parties reverted to the terms under the Loan. (Doc. 1-3 at 19-22.) The Loan has a final maturity date of April 11, 2037, meaning installment payments under the Loan continue to mature and go unpaid each month, which restarts the six-year statute of limitations upon each non-payment. *Wheel Estate Corp. v. Webb*, 679 P.2d 529, 531 (Ariz. Ct. App. 1983) ("[T]he failure of Webb to pay each installment would arguably be a series of breaches, each giving rise to a separate cause of action."). As a result, Trinity's October 15, 2019 Notice of Trustee's Sale was recorded well within the statute of limitations period.

---

[2] For example, each report classifies the debt is "current" or "never late," which is patently erroneous.

Moving on to count one's statutory argument, § 33-707(A) did not require BSI to release the DOT following Plaintiff's acceptance of the Settlement Agreement. Section 33-707(A), in relevant part, states,

> If a mortgagee . . . receives an amount less than full satisfaction of a mortgage or deed of trust, but has agreed in writing to release the mortgage or deed of trust, the mortgagee . . . shall acknowledge release of the mortgage or deed of trust by delivering to the person making payment of the agreed amount. . . or by recording a sufficient release of the mortgage or release and reconveyance of the deed of trust.

This section essentially addresses a mortgagee's obligation to release a lien after entering into an accord and satisfaction regarding the underlying debt. Here, the undisputed evidence shows that BSI had agreed to compromise the underlying debt upon receipt of $30,000, payable in installments. It also is undisputed that Plaintiff failed to remit the full $30,000. Because BSI did not receive the lesser amount it had agreed to accept in full satisfaction of the mortgage, § 33-707(A) did not require it to release of the DOT.

Focusing solely on the dispositive motions briefing, one easily could forget that count one is a statutory claim. This is so because the parties largely brief this count as if it were a breach of contract claim, with the relevant contract being the Settlement Agreement. Under this theory, Plaintiff argues that BSI offered to immediately release the DOT in exchange for Plaintiff's *agreeing* to settle the Loan for $30,000, but not actually *paying* that amount. BSI then breached by failing to do so after Plaintiff accepted the Settlement Agreement—by signing and agreeing to make the payoff—even though Plaintiff indisputably did not perform his obligation to make the payoff. Viewed this way, Plaintiff does not seek a statutory remedy; he seeks specific performance. Trinity responds not by addressing the language of § 33-707(A), but by arguing, *inter alia*, that construing the Settlement Agreement in the way Plaintiff advocates would render it unenforceable for lack of consideration. The Court agrees.

As explained in its January 17, 2020 order, "[r]estructuring a preexisting financial agreement in a manner that provides all of the benefit to one party and all of the detriment to the other is not a valid contract." *Wassef v. JPMorgan Chase Bank, N.A.*, No. CV-12-

- 7 -

02480-PHX-DGC, 2013 WL 2896853, at *2 (D. Ariz. June 13, 2013). Under the Settlement Agreement as interpreted by Plaintiff, Trinity provides all the benefits, agreeing to release the DOT. In exchange, Plaintiff simply agrees to enter an agreement to reduce the amount due under his preexisting Loan but does not necessarily agree to perform those reduced payment obligations. Such an agreement gives all the benefit to Plaintiff and all the detriment to Trinity, and therefore lacks legally adequate consideration.[3] Consequently, even if the Court were to construe count one as a breach of contract claim, rather than a statutory claim, summary judgement for Trinity remains appropriate.

Perhaps recognizing these defects, for the first time in his motion for reconsideration Plaintiff attempts to add claims for promissory estoppel and breach of the covenant of good faith and fair dealing. (Doc. 77.) But Plaintiff has never moved to amend to add these claims, despite obtaining counsel over one year ago. Plaintiff makes no argument in support of allowing amendment at this late stage, which potentially could prejudice Trinity by requiring yet another round of discovery and briefing. Accordingly, the Court declines to consider these improperly raised claims. *Intercontinental Travel Marketing, Inc.v.*

---

[3] Plaintiff asserts that the Settlement Agreement was supported by adequate consideration because, in agreeing to settle the Loan, he forwent bankruptcy. However, the summary judgment record does not support that Plaintiff promised to not file bankruptcy in exchange for release of the DOT. The only record evidence Plaintiff cites for the suggestion makes no mention of bankruptcy and actually cuts against Plaintiff's theory:

> I contacted [BSI] to discuss the settlement of my second mortgage balance . . . I generally explained to the BSI representative(s) that my home was worth less than my first mortgage balance due to the real estate market crash, and I could not afford to continue to pay both my first and second mortgage payments. *I offered to settle the second mortgage balance in full for $30,000 and the immediate[] release of the second mortgage lien.* In support of my settlement negotiations, I explained that [BSI] was for the most part, already in an unsecured position due to the substantially lower value of my home. I further explained that if [BSI] were to foreclose on my home, the sale proceeds would not be sufficient to pay off my first mortgage balance let alone the second mortgage with [BSI.]"

(Doc. 63 at 65-66 (emphasis added).) Moreover, even if there were evidence to support Plaintiff's consideration theory, Plaintiff filed for bankruptcy less than one year later, meaning he did not uphold his end of this alleged bargain.

1 | *FDIC*, 45 F.3d 1278, 1286 (9th Cir. 1994).

2 | **IT IS ORDERED** that Plaintiff's motion for summary judgment (Docs. 43, 84) is **DENIED** and Trinity's motion for summary judgment (Doc. 64) is **GRANTED**. The Clerk shall enter judgment in favor of Trinity on all claims and terminate this case.

Dated this 10th day of June, 2020.

Douglas L. Rayes
United States District Judge